**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **JAIME MORENO, Individually and** | § | |
| **On Behalf of Those Similarly Situated,** | § | |
| **AND OLGA MORENO,** | § | |
| *Plaintiffs,* | § | **CIVIL ACTION NO. 3:20-cv-300** |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **ALLISON MEDICAL, INC.,** | § | |
| *Defendant.* | § | |

## ORIGINAL CLASS ACTION COMPLAINT

COME NOW, Plaintiffs, JAIME MORENO, individually and on behalf of those similarly situated, and OLGA MORENO (hereinafter collectively referred to as "Plaintiffs"), and file this Original Complaint against ALLISON MEDICAL, INC. (hereinafter "Defendant") and would respectfully show the Court as follows:

### I.     PARTIES

1.     Plaintiffs JAIME MORENO and OLGA MORENO are residents and citizens of the State of Texas residing in Brazoria County, Texas.

2.     Defendant ALLISON MEDICAL, INC. is a foreign corporation organized and existing under the laws of the State of Colorado and having its principal place of business at 8091 Shaffer Parkway, Littleton, Colorado 80127. At all times material to this action, Defendant has engaged in the business of manufacturing, marketing, distributing, and/or selling medical devices in the State of Texas, as more particularly described herein. Defendant does not maintain a place of regular business in Texas and has no designated agent for service of process in Texas. The causes of action asserted herein arise out of Defendant's business activities in the State of Texas.

Accordingly, the Texas Secretary of State is the agent for service on this Defendant, and Defendant Allison Medical, Inc. may be served with process by serving the Texas Secretary of State at Office of the Texas Secretary of State, Statutory Documents Section – Citations Unit, 1019 Brazos St., Austin, Texas 78701.

## II.    JURISDICTION AND VENUE

3.    This Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332(a) because complete diversity of citizenship exists between Plaintiffs and Defendant, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4.    This Court has personal jurisdiction over Defendant as it purposefully availed itself of the privileges and benefits of conducting business in the State of Texas by placing its products that are the subject of this suit into the stream of commerce with the knowledge that such products would be used in Texas. Further, Defendant's contacts with the forum State are continuous and substantial, and the claims Plaintiffs assert herein arise out of Defendant's contacts with the forum.

5.    Venue is proper in this district and division under 28 U.S.C. §1391(b)(2) because an event giving rise to the Complaint occurred in this judicial district, and, at the time of filing, Plaintiffs resided within this district, in Brazoria County, Texas. Defendant continuously and systematically does business within this district and division.

## III.    CONDITIONS PRECEDENT

6.    Plaintiffs aver that all conditions precedent have been performed or occurred, or otherwise have been waived.

## IV.    FACTS

7.    This is a products liability suit arising out of Defendant's manufacture, marketing, distribution, and sale of certain medical syringes intended for consumer use and specifically

identified as 31-gauge "Sure Comfort Insulin Syringes," U-100 Insulin, Lot # 181105AS, EXP

2023-10-31, NDC # 86227065105 (hereinafter referred to as the "Syringe(s)").

8.    At all times material and relevant to this Complaint, Defendant Allison Medical,

Inc. was engaged in the business of manufacturing, marketing, distributing, and selling the

Syringes that are the subject of this suit.

9.    At all material times, the Syringes were manufactured, marketed, distributed, and

sold by Defendant and, thus, placed into the stream of commerce by Defendant whereby the

Syringes reached consumers, including Plaintiffs, without substantial change in the condition in

which they were sold.

10.    On or about August 29, 2019, together with various prescriptions for injectable

medications for the treatment of his erectile dysfunction, Plaintiff Jaime Moreno's ("Plaintiff" or

"Mr. Moreno") physician wrote him a prescription for the Syringes, thereby directing Plaintiff to

use the Syringes to administer said injectable medications.

11.    On September 24, 2019, Plaintiff Jaime Moreno was attempting to carefully and

properly administer an injectable medication prescribed for treatment of his erectile dysfunction.

Plaintiff has used this type of needle for his routine injections during the past several years and

never experienced a problem or malfunction with any needles in the past. During a routine

intracavernous injection using the Syringes, which were prescribed by his physician in conjunction

with the prescribed injectable medications, suddenly and without warning, the needle within the

Syringe broke off inside the shaft of Plaintiff's penis. This had never happened to Plaintiff in his

numerous prior injections and was not the result of misuse, as Plaintiff did not exert any

unwarranted or unexpected vertical or lateral pressure on the Syringe or needle at the injection site,

it being a particularly sensitive area of the male anatomy. Plaintiffs would show that the needle broke due to brittle and/or improperly milled and manufactured metal or material.

12.     Following the incident, Mr. Moreno presented to a physician who ordered an x-ray to locate the broken needle and, thereafter, referred Mr. Moreno to a urologist for surgical removal of the broken needle that remained within the shaft of Mr. Moreno's penis. .

13.     On or about October 11, 2019, Mr. Moreno underwent a surgical procedure to remove the needle. After a painful surgery and recovery process, to date, Mr. Moreno continues to suffer physical and mental pain and suffering and other complications as a direct result of his use of the defective Syringe manufactured, marketed, distributed, and sold by Defendant.

14.      Upon reasonable information and belief, Plaintiffs assert that the subject Syringes were defective and unreasonably dangerous because upon reasonable, ordinary, and routine use thereof by Plaintiff, a subcutaneous needle break occurred, resulting in physical harm and injury to Plaintiff.

15.     As a result of the defective Syringe manufactured and sold by Defendant, Mr. Moreno required medical treatment that included referral to a urology specialist and, ultimately, a painful surgical procedure followed by a difficult recovery process that, in some respects, is still ongoing. To this date, Plaintiff Jaime Moreno and his wife, Plaintiff Olga Moreno, continue to experience harm and damage to their daily life as a result of the injuries to Mr. Moreno caused by the defective Syringes.

16.     The defective Syringes manufactured, marketed, distributed, and sold by Defendant were the proximate and producing cause of the injuries and damages suffered by Plaintiffs.

17.     At all times material and relevant to this Complaint, Defendant was engaged in the business of manufacturing, marketing, distributing, and selling the subject Syringes in question.

The subject Syringes were placed into the stream of commerce by Defendant for sale, all with the expectation and knowledge that such products would be sold to consumers in the Southern District of Texas. The Syringes in question reached Plaintiff without any substantial change or alteration from the condition that the products were in at the time they left the possession and control of Defendant.

18.     Upon information and belief, the subject Syringes were in a defective condition and/or was unreasonably dangerous to the ordinary consumer for their intended uses at the time of its design, manufacture, and placement into the stream of commerce, including use by consumers, like Plaintiffs.

19.     Upon information and belief, Defendant failed to take appropriate steps to ensure the Syringes were reasonably safe for their intended use before manufacturing, marketing, distributing, and selling the Syringes and before placing the Syringes into the stream of commerce whereby the Syringes would reach consumers like Plaintiffs.

20.     At all times material, Defendant placed the subject medical devices into the stream of commerce and held out to the public that such devices were safe and effective despite knowledge of the defective and unreasonably dangerous condition of the Syringes.

21.     At all times material, Defendant knew that the Syringes were defective and/or unreasonably dangerous, but they failed to disclose and/or endeavored to conceal these facts from the public, physicians, and Plaintiffs. Had Plaintiff known of the defective and unreasonably dangerous condition of the Syringes, he would not have used them to administer the injectable medications prescribed to him by his physician.

22.     At all times material, Defendant was in the business of manufacturing, marketing, distributing, and selling, either directly or indirectly through third-parties or related entities, the

Syringes prescribed to and used by Mr. Moreno to perform intracavernous injections of his prescribed, injectable medication for the treatment of erectile dysfunction.

23.     At all times material, Defendant did in fact manufacture, market, distribute, and sell, either directly or indirectly, through third parties or related entities, the Syringes in question for consumer use, including the Syringe that was used by Plaintiff Jaime Moreno on the date of the incident resulting in injury and damages to Plaintiffs.

24.     At all times material, Defendant knew that the Syringes were commonly prescribed by physicians for consumer use, including to perform intracavernous injections to administer prescribed injectable medications for the treatment of erectile dysfunction.

25.     Upon information and belief, Defendant assumed a duty to train, instruct, and warn physicians, including Plaintiff's physician, with respect to the proper uses, potential risks, and potential adverse effects of the Syringes. Upon information and belief, Defendant failed to adequately train, instruct, and/or warn physicians, including Plaintiff's physician, with respect to the proper uses, potential risks, and potential adverse effects of the Syringes.

26.     Upon information and belief, prior to and since marketing and selling the Syringes at issue, Defendant possessed actual or constructive knowledge, or otherwise knew or reasonably should have known, that the Syringes were manufactured in a defective or faulty manner, or were otherwise defective or unreasonably dangerous for use by consumers, like Plaintiffs.

27.     Despite such prior knowledge, as described above, Defendant decided not to take any feasible measures to promptly and timely correct the defective or faulty way the Syringes were manufactured. Moreover, Defendant made the conscious decision to sell and distribute the Syringes for consumer use and without issuing or supplying the proper warnings to the public or prescribing physicians.

28.     As a direct and proximate result of Defendant's improper and negligent conduct as further described herein, including its knowing manufacturing and sale of the Syringes that were defective and unreasonably dangerous, Plaintiffs have suffered injury and damages. In addition to actual damages suffered by Plaintiffs, to date, including the cost, expense, and physical and mental suffering associated with the surgical procedure Plaintiff Jaime Moreno had to undergo for removal of the broken needle from the Syringe, Plaintiffs have in the past and will in the future experience physical injuries, pain and suffering, loss of enjoyment of life, loss of consortium, lost wages, medical expenses, medical monitoring expenses, embarrassment and humiliation, fright and apprehension, emotional distress, and other damages.

29.     Plaintiffs bring this action for damages suffered by Plaintiffs as a direct and proximate result of Defendant's negligence and wrongful conduct in connection with the testing, manufacture, and sale of the Syringes. Plaintiffs herein assert causes of action against Defendant for strict liability products liability, negligence, violations of the Texas Deceptive Trade Practices Act, and breach of warranties.

## V.     CAUSES OF ACTION

### A.     FIRST CAUSE OF ACTION: STRICT LIABILITY

30.     Plaintiffs adopt and incorporate by reference, as if fully set forth herein, all factual and legal allegation contained in this Complaint, and further allege as follows:

31.     At all times material, Defendant was engaged in the business of designing, manufacturing, assembling, marketing, distributing, and/or selling the subject Syringes for ultimate resale to consumers like Plaintiffs. Defendant designed, manufactured, assembled, marketed, distributed, and/or sold and placed in the stream of commerce these unreasonably

dangerous sand/or defective Syringes, which were unsafe, adulterated, and misbranded at the time they left the control of Defendant.

32.     Defendant designed, manufactured, distributed, marketed, and/or sold the Syringes that were sold to and purchased by Plaintiff Jaime Moreno upon presentation of a prescription for the Syringes written by his physician together with prescriptions for injectable medications prescribed for the treatment of erectile dysfunction.

33.     The Syringes purchased and used by Plaintiff Jaime Moreno were defective because the products' construction or quality deviated from the specifications or planned output in a manner that rendered them unreasonably dangerous and not reasonably safe or fit for their intended purpose or use because  and defective at the time they left the possession or control of Defendant because they contained a manufacturing defect and a marketing defect.

34.     At all relevant times, Defendant was engaged in the business of designing, manufacturing, marketing, distributing, and selling of the subject Syringes and, thus, the placement of the subject Syringes into the stream of commerce for consumer use.

35.      Defendant is in the business of selling such products with the expectation that such products will reach the user without substantial change in the condition in which it is sold. The Syringe reached the ultimate user, Plaintiff Jaime Moreno, without substantial change in the condition in which it was sold.

36.      Defendant formulated, designed, manufactured, distributed, marketed, and/or sold the Syringe. This product was defective and unsafe for its intended purpose at the time it left the control of Defendant and at the time it was sold. This product was defective in that it posed an inherent danger when injected and caused physical harm and consequent damages to Plaintiffs.

37.     Furthermore, the product contained a manufacturing defect in that the needle of the Syringe had a bending deformation. When it left the hands of the manufacturer or seller, the Syringe was unreasonably dangerous. This manufacturing defect made the Syringe dangerous to an extent beyond that which would be contemplated by the ordinary user of the Syringe or product with ordinary knowledge common to the community. This manufacturing defect was a proximate and producing cause of injuries to Plaintiffs.

38.     In addition, or in the alternative, Plaintiffs assert that the product was defectively designed, in that, when the products left the hands of Defendant, the product was unreasonably dangerous, being dangerous to an extent beyond that which would be contemplated by the ordinary user of the products with ordinary knowledge common to the community. The product was defectively designed so as to render it unreasonably dangerous, with its risks outweighing its utility as designed. Alternative designs were feasible. This design defect was a producing and proximate cause of damages to Plaintiffs.

39.     In addition, or in the alternative, Plaintiffs assert that the product in question was defective and unreasonably dangerous in that while Defendant promoted and sold the Syringes as being safe and effective for their intended use, the product failed to contain warnings regarding the potential risks to users of its harmful side effects or adequate instructions for safe use of the product. Defendant failed to adequately warn Plaintiffs or their physician of the risk to the patients, risks generally unknown to Plaintiffs or their physician. In addition, and/or in the alternative, Defendant failed to provide Plaintiffs with adequate instructions for use of the Syringe. The failure to provide adequate instructions was a producing case of injuries to Plaintiffs.

40.     Defendant had a duty to adequately warn the user and/or a learned intermediary of the extent of danger inherent in the use of its product not generally known to the user or the learned

intermediary. Defendant breached these duties. These marketing defects in the product were a proximate and producing cause of the injuries to Plaintiffs herein described.

**B.    SECOND CAUSE OF ACTION: NEGLIGENCE**

41.    Plaintiffs adopt and incorporate by reference, as if fully set forth herein, all factual and legal allegation contained in this Complaint, and further allege as follows:

42.    Defendant owed a duty of care to manufacture, market, distribute and sell the designated Syringes in a safe and non-defective manner so as to avoid injury or damage to consumers like Plaintiffs.

43.    Defendant breached its duty of care and was negligent because the subject Syringes were manufactured, marketed, distributed, and sold in a defective and unreasonably dangerous condition causing subcutaneous needle breaks to occur when the Syringes are used to administer injectable medications as prescribed.

44.    Defendant failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control and distribution of the Syringes into the stream of commerce. Upon information and belief, the negligent acts and omissions of Defendant, its agents, servants, and employees include, but are not limited to:

a.    Negligently designing the Syringe in a manner that was dangerous to those individuals who used it;

b.    Designing, manufacturing, producing, creating and promoting the Syringe without adequately, sufficiently or thoroughly testing it;

c.    Not conducting a sufficient testing program to determine whether or not the Syringe was safe for use;

d.    Marketing and selling the Syringe when Defendant knew or should have known that it was unsafe and unfit for use because of the dangers to its users;

e.  Selling the Syringe without making proper and sufficient tests to determine the dangers to its users;

f.  Negligently failing to adequately and correctly warn Plaintiffs of the dangers of the Syringe;

g.  Negligently failing to recall their dangerous and defective Syringe at the earliest date that it became known that the device was, in fact, dangerous and defective;

h.  Negligently advertising and recommending the use of the Syringe despite the fact Defendant knew or should have known of its dangerous propensities;

i.  Negligently representing that the Syringe was safe for use for its intended purpose, when, in fact, it was unsafe;

j.  Negligently representing that each needle in the Syringe is carefully lubricated and monitored for any imperfection to ensure injection comfort;

k.  Negligently manufacturing the Syringe in a manner that was dangerous to those individuals who used it;

l.  Negligently producing the Syringe in a manner that was dangerous to those individuals who used it;

m.  Negligently assembling the Syringe in a manner, that was dangerous to those individuals who used it; and

n.  Negligently under-reporting, underestimating, and downplaying the serious dangers of the Syringe.

45.  Defendant failed to exercise reasonable care in the manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control and distribution of the Syringes into the stream of commerce. Defendant's negligent acts and omissions include, but are not limited to:

a.  failure to use due care in designing and manufacturing the Syringes so as to avoid the risks to individuals that used them;

b.  failure to accompany their product with proper and adequate warnings;

c.  failure to accompany their product with proper and adequate instructions for use; and

       d.   Failure to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the product.

46.     Defendant knew or should have known that consumers, such as Plaintiffs, would suffer foreseeable injury and be at increased risk of suffering an injury as a result of Defendant's failure to exercise reasonable care, as described herein. Specifically, Defendant knew or should have known that the Syringes were defective or unreasonably dangerous in that there was an increased risk of subcutaneous needle breaks associated with ordinary use of the Syringes.

47.     Even though Defendant knew or should have known that the Syringe caused harm to individuals that used it, Defendant continued to market, manufacture, distribute and sell the Syringe.

48.     The negligent acts and omissions of Defendant as described herein, collectively, singularly, or in combination, proximately caused injury and damages to Plaintiffs. Plaintiffs have suffered and will continue to suffer in the future severe harmful effects, including personal injuries which are permanent and lasting in nature, economic loss, physical pain and suffering mental anguish, diminished enjoyment of life, loss of consortium, and other damages.

49.     Defendant is liable to Plaintiffs for its negligent conduct that is the proximate cause of physical, emotional, and economic injuries and damages that Plaintiffs have suffered, to date, and will continue to suffer in the future.

## C.   THIRD CAUSE OF ACTION: TEXAS DECEPTIVE TRADE PRACTICES ACT

50.     Plaintiffs adopt and incorporate by reference, as if fully set forth herein, all factual and legal allegation contained in this Complaint, and further allege as follows:

51.     Plaintiffs are "consumers" under Section 17.45(4) of the Texas Deceptive Trade Practices Act ("DTPA") because they are individuals who acquired, by purchase, the goods or

products that form the basis of this lawsuit and have suffered damages for which they are entitled to compensation under the DTPA. TEX. BUS. & COM. CODE §§ 17.41–17.63, *et seq*

52.     Plaintiffs seek to recover damages against Defendant pursuant to the provisions of the DTPA because Defendant knowingly and/or intentionally breached its implied warranties with respect to the Syringes that are the subject of this lawsuit and further engaged in false, misleading, or deceptive acts or business practices including, but not limited: (a) representing that the Syringes at issue had characteristics, uses, or benefits which they did not; and (b) representing that the Syringes at issue were of a particular standard, quality or grade when, in fact, they were not.

53.     Defendant engaged in the foregoing false, misleading, or deceptive acts or business practices because it knew or reasonably should have known that the Syringes at issue were manufactured in a defective manner, prone to failure, and had a high risk of failing including, but not limited, failure in the form of subcutaneous needle breaks upon consumer use of the Syringes to administer injectable medications as prescribed. Furthermore, and despite this knowledge, Defendant knowingly and/or intentionally: (i) failed to warn the public, physicians, or any other person or entity about this unreasonably dangerous condition; (ii) failed to promptly and timely correct the defective or faulty manner in which the Syringes were manufactured or marketed; (iii) failed to take any feasible measures available to it to promptly and timely correct the defective and unreasonably dangerous condition in which the Syringes were reaching consumers; and (iv) failed to take any feasible measures available to it to promptly and timely prevent harmful failures in the form of harmful and injurious subcutaneous needle breaks to consumer users of the product.

54.     Defendant's conduct of engaging in false, misleading, and/or deceptive acts or business practices constitute the proximate and producing cause of the damages suffered by

Plaintiffs as alleged herein, and Plaintiffs have standing to bring a DTPA action against Defendant pursuant to Section 17.50 of the Texas Business & Commerce Code.

55.    Plaintiffs also have standing to maintain a DTPA action against Defendant under Section 17.50(a)(2) of the Texas Business & Commerce Code because Defendant breached its implied warranties to Plaintiffs, as previously described herein and as further alleged below, and such breach constituted the proximate and producing cause of Plaintiffs' damages as alleged in this lawsuit.

56.    Defendant knowingly breached its implied warranties to Plaintiffs because it had actual knowledge and awareness of the defective and unreasonably dangerous condition in the Syringes and/or the faulty manufacturing process that rendered the Syringes defective and unreasonably dangerous.  Further, despite Defendant's knowledge and awareness as herein described, Defendant failed: (i) to adequately warn about the defective and unreasonably dangerous condition of the Syringes; (ii) to attempt to promptly correct or prevent this defective or unreasonably dangerous condition in the subject products; and/or (iii) to attempt to promptly correct or prevent the faulty manufacturing process resulting in the defective and/or unreasonably dangerous condition of the subject products.

57.    Defendant also intentionally breached its implied warranties because it had actual awareness of the conditions, defects, and failures in the Syringes, as otherwise described herein,, coupled with the specific intent that the consumer, such as the Plaintiffs, act in detrimental ignorance of the unfairness of the Defendant's conduct in manufacturing, marketing, and selling the Syringes at issue, as evidenced by Defendant's knowing and/or intentional failure to warn about the defective and unreasonably dangerous condition in the Syringes at issue and the faulty manufacturing process that created this defective and unreasonably dangerous condition.

58.     The Defendant's violations of the DTPA were the proximate and producing cause of Plaintiffs' damages, as alleged herein Plaintiffs are entitled to actual damages, mental anguish damages, treble damages, court costs, and attorney's fees. For knowing and/or intentional conduct of the acts described above, Plaintiffs ask for three times their actual damages as allowed by law.

59.     For the prosecution and collection of this claim, Plaintiffs have been compelled to engage the services of the attorney whose name is subscribed to this pleading.  Therefore, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

60.     Plaintiffs aver that notice prior to filing suit pursuant to Section 17.505 was impractical by reason of the necessity of filing suit or otherwise unnecessary under the facts and circumstances of this case.

## VI.     CLASS ALLEGATIONS AND ADDITIONAL CAUSES OF ACTION BY PLAINTIFF JAIME MORENO, INDIVIDUALLY AND ON BEHALF OF PROPOSED CLASS MEMBERS

61.     Plaintiff Jaime Moreno brings the following breach of warranty cause of action both individually and on behalf of all other persons who are similarly situated, in accordance with Rule 23 of the Federal Rules of Civil Procedure.

### A.     CLASS ALLEGATIONS

62.     Plaintiff anticipates defining this Class as follows, although such definition may be further clarified at the time of the Motion for Class Certification:

> All persons in the United States who purchased 31-gauge "Sure Comfort Insulin Syringes," U-100 Insulin, Lot # 181105AS, EXP 2023-10-31, NDC# 86227065105 (hereinafter referred to as the "Syringe(s)").

63.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and defense counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

64.     This cause seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request recovery for personal injury or personal injury related claims.

65.     Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

66.     **Numerosity.** The exact size of the Class is unknown and not available to Plaintiff presently, but Plaintiff avers that individual joinder is impracticable.

67.     On information and belief, Defendant designed, manufactured, tested, marketed distributed, and sold the Syringes to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendant's records.

68.     **Commonality and Predominance.** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

69.     Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant made and/or breached express warranties relating to the Syringes;

(b) whether Defendant breached the implied warranty of merchantability relating to the Syringes;

(c) whether Plaintiff and the Class are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages; and

(d) whether Plaintiff and the Class are entitled to an award of attorneys' fees, interest, and costs of suit.

70.    The above listing, albeit preliminary and not exclusive, demonstrates the existence of common questions of law and fact based on the same core evidence for all members of the Class.

71.    **Typicality**. The claims of the individually named Plaintiff Jaime Moreno are typical of the claims of the Class and do not conflict with the interests of any other members of the Class, in that Plaintiff Jaime Moreno and the other members of the Class were subjected to the same uniform practices of the Defendant.

72.    **Adequacy.** The individually named Plaintiff Jaime Moreno will fairly and adequately represent the interest of the Class. Mr. Moreno is committed to the vigorous prosecution of the Class' claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions and, in particular, consumer protection claims.

73.    Neither Plaintiff(s) nor the undersigned counsel for Plaintiffs are antagonistic with the Class or have an interest in conflict with the Class.

74.    **Superiority.** Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages

incurred by each Class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits. Consequently, the likelihood of individual class members prosecuting separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

75.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

76.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

**B.    FOURTH CAUSE OF ACTION: BREACH OF EXPRESS WARRANTY**

77.    The cause of action for breach of express warranty is asserted on behalf of Plaintiff Jaime Moreno, individually, as well as the proposed Class members. Plaintiff adopts and incorporate by reference, as if fully set forth herein, all factual and legal allegation contained in this Complaint, and further allege as follows:

78.    Defendant designed, manufactured, tested, marketed, sold, distributed, and placed into the stream of commerce the subject Syringes.

79.    Defendant expressly warranted that the Syringes were safe and effective for their intended used.

80.    The Syringes placed into the stream of commerce by Defendant did not conform to these express representations because their ordinary and intended use resulted in subcutaneous needle breaks thereby giving rise to unnecessary physical injury, pain and suffering, debilitation,

and other damages including, but not limited, the necessity of surgery to remove the needle, the associated complications and risks of such surgery, and a burdensome and difficult recovery process following surgery.

81.    As a direct and proximate result of Defendant's breach of express warranties regarding the safety and effectiveness of the Syringes, Plaintiff and the proposed Class members have suffered and will continue to suffer in the future injury and damages.

## C.    FIFTH CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY

82.    The cause of action for breach of implied warranty is asserted on behalf of Plaintiff Jaime Moreno, individually, as well as the proposed Class members. Plaintiff adopts and incorporate by reference, as if fully set forth herein, all factual and legal allegation contained in this Complaint, and further allege as follows:

83.    Defendant is in the business of designing, manufacturing, marketing, distributing, selling, and placing into the stream of commerce for consumer use the subject Syringes.

84.    By placing the Syringes into the stream of commerce, Defendant impliedly warranted that they were merchantable and fit and safe for their intended use.

85.    The Syringes placed into the stream of commerce by Defendant were defective and accordingly, not fit, safe, or merchantable for the intended use.

86.    The defects in the Syringes designed, manufactured, marketed, distributed, sold, and placed into the stream of commerce by Defendant were present at the time the product left Defendant's control.

87.    Defendant breached its implied warranties with respect to the subject Syringes because they were defective, unmerchantable, and not fit for their intended purpose.

88.     Plaintiff Jaime Moreno and the proposed Class members were foreseeable users of the Syringes in question.

89.     As a direct and proximate result of Defendant's breach of these implied warranties, Plaintiffs and the Class have suffered and will continue to suffer injury, expense and economic loss as previously described, rendering Defendant liable for said damages.

## VII.    PLEA FOR PUNITIVE DAMAGES

90.     Plaintiffs adopt and incorporate by reference, as if fully set forth herein, all factual and legal allegation contained in this Complaint, and further allege as follows:

91.     Plaintiffs seek exemplary damages caused by, *inter alia*, the degree of culpability on the part of Defendant, *i.e.* gross negligence, fraud and/or malice of Defendant, for damages and losses relating to its actions as herein described.

92.     Plaintiffs' injuries resulted from Defendant's gross negligence, malice, or actual fraud, which entitles Plaintiffs to exemplary damages under Section 41.003(a) of the Texas Civil Practices & Remedies Code and the common law.

93.     Defendant's actions and omissions described above, when viewed from the standpoint of Defendant at the time such acts act or omission were committed, involved an extreme degree of risk when considering the probability and magnitude of the potential harm to Plaintiffs and other patients prescribed the subject Syringes in conjunction with their prescribed, injectable medications. Defendant had actual, subjective awareness of the risk involved in the above described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs and other patients.

94.     Plaintiffs intend to show that the factors the jury may consider in determining the amount of exemplary damages which should be awarded include, but are not limited to: (1) the

nature of the wrong committed by Defendant; (2) the character of Defendant's conduct; (3) the degree of culpability of Defendant; (4) Defendant's net worth; (5) the situation and sensibilities of the parties concerned; and (6) the extent to which Defendant's conduct offends a public sense of justice and propriety.

95.    As such, Plaintiffs ask that they be entitled to recover punitive damages from Defendant.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury for all such triable claims.

## IX.    PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon trial hereof, said Plaintiffs have and recover such sums as would reasonably and justly compensate them in accordance with the rules of law and procedure, including all actual, general, special, incidental, statutory, treble or other multiple, and consequential damages to which Plaintiffs are entitled for the claims and injuries plead herein and all punitive and exemplary damages as may be found. Plaintiffs also respectfully ask the Court, upon proper motion and hearing, to certify the above-pled breach of warranty causes of action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and to appoint Plaintiff Jaime Moreno as class representatives and the undersigned attorneys-in-charge for Plaintiffs as class counsel. Plaintiffs further request the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for prejudgment and postjudgment interest as allowed by law, and for any other and further relief, at law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,

**HUGHES ELLZEY, LLP**


 */s/ W. Craft Hughes*
W. Craft Hughes
Texas Bar No. 24046123
Jarrett L. Ellzey
Texas Bar No. 24040864
Leigh S. Montgomery
Texas Bar No. 24052214
Ghazzaleh Rezazadeh
Texas Bar No. 24072301
1105 Milford Street
Houston, Texas 77006
Office: (713) 322-6387
Facsimile: (888) 995-3335

**ATTORNEYS FOR PLAINTIFFS**